IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RAPHAEL CRUZ-RIVERA,**

      **Petitioner,**

v.                                      **CIVIL ACTION NO. 5:15cv17**
                                            **(Judge Stamp)**

**TERRY O'BRIEN, WARDEN,**

      **Respondent.**

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

On March 15, 2015, Petitioner, Raphael Cruz-Rivera, filed a *pro se* Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241. On that same day, Petitioner paid the $5.00 filing fee. On March 2, 2015, Petitioner filed his habeas application on the court-approved form. On March 4, 2015, an Order to Show Cause was entered, and, on May 4, 2015, Respondent filed a Motion to Dismiss or for Summary Judgment together with a Memorandum in Support and exhibits. On May 5, 2015, a Roseboro Notice was issued, and, on May 19, 2015, Petitioner filed a Response in Opposition.

**II.    PROCEDURAL HISTORY**

On March 24, 1977, Petitioner was arrested by law enforcement officials from the Commonwealth of Puerto Rico on charges of murder, escape, kidnapping, armed robbery and various weapons offenses. ECF No. 16-1 at 4. On April 8, 1982, Petitioner was sentenced by the Commonwealth of Puerto Rico to a term of 140 years of imprisonment. With good time credit, Petitioner's sentence expires on May 22, 2056, and his minimum parole date was originally calculated as December 14, 2010. ECF No. 16-1 at 6.

After his sentencing, Petitioner was placed in the physical custody of the Bureau of Prisons

1

("BOP") pursuant to an agreement between the BOP and the Commonwealth of Puerto Rico. Title 18, United States Code, Section 5903 authorizes the Director of the BOP to establish contracts to accept state prisoners for boarding in federal institutions. The BOP requested updated information regarding Petitioner's parole eligibility status, and, on May 6, 2014, it received an updated sentence summary from the Commonwealth of Puerto Rico. Based on the application of credit for work days, Petitioner's projected release date was changed to September 22, 2051. ECF No. 16-1 at 8. Petitioner's parole information was left blank on the new summary, which was dated April 1, 2014, possibly reflecting that he was parole-eligible. Id. However, the BOP has not been directed by the Commonwealth of Puerto Rico to release Petitioner on parole, return him to the Commonwealth or make him available for parole proceedings. ECF No. 16-1 at 2.

### III.  CURRENT PROCEEDINGS

Petitioner alleges that there is a clear defect in the manner in which his sentence is being executed. More specifically, Petitioner notes that after serving the minimum thirty-one years, he has yet to be given a single parole hearing. Therefore, Petitioner maintains that the BOP has failed to compute his sentence in a manner that notifies the "Territorial Parole Authorities" of his service of the minimum sentence which deprives him of liberty without due process. For relief, Petitioner seeks an order releasing him from custody or, in the alternative, an order that he be brought before the appropriate authorities to afford him a meaningful opportunity for release.

In support of his Motion to Dismiss or for Summary Judgment, Petitioner argues that there is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence. Accordingly, Respondent argues any failure to grant parole from a lawful Commonwealth of Puerto Rico sentence – even if it were within the power and authority of Respondent – does not constitute a constitutional violation and would not provide a basis for § 2241 relief. Accordingly, Respondent argues that this petition should be denied and the action terminated.

In the alternative, Respondent contends that assuming, *arguendo*, that the instant petition was not subject to dismissal, any proceedings challenging the alleged failure of the Commonwealth of Puerto Rico to consider or grant Petitioner parole should be held in the judicial district exercising jurisdiction over Petitioner's legal, not physical custodian. Therefore, Respondent maintains that this matter should be transferred to the United States District Court for the District of Puerto Rico for all further proceedings.

In response, Petitioner maintains that the BOP, and more specifically Respondent, should have notified the Territorial Parole authorities because his parole eligibility date has "been active for the last five (5) years." Petition notes, however, that he has no adverse response to Respondent's "request" to transfer this matter to the United States District Court for the Commonwealth of Puerto Rico.

### III.  STANDARD OF REVIEW

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.     Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

### IV.　ANALYSIS

**A.　§ 2241 vs. § 2254**

There are potentially two statutes which provide Petitioner with access to federal habeas relief – 28 U.S.C. § 2241 and 28 U.S.C. § 2254. Under § 2241, a federal court may issue a writ of habeas corpus to a federal or state prisoner if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a)(c)(3). Similarly, under § 2254, a federal court may issue a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Id. § 2254(a). Therefore, both § 2241 and § 2254 appear to provide this court with jurisdiction to consider Petitioner's federal habeas petition.

However, a majority of appellate courts that have addressed which statute is the appropriate

jurisdictional statute when state prisoners challenge the execution – rather than the validity – of their sentences have held that such challenges must be brought under § 2254.[1] As the United States Court of Appeals for the Ninth Circuit explained:

> Although the text of either statute would appear to confer jurisdiction, a proper understanding of the interaction between 28 U.S.C. § 2241 and 28 U.S.C. § 2254 leads us to the conclusion that they apply in different situations. Section 2254 is properly understood as "in effect implement[ing] the general grant of habeas corpus authority found in § 2241, as long as the person is in custody pursuant to the judgment of a state court, and not in state custody for some other reason, such as pre-conviction custody, custody awaiting extradition, or other forms of custody that are possible without a conviction."

White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004), *overruled* on other grounds by Heyward v. Marshall, 603 F.3d 546 (9th Cir. 2010).

The United States Court of Appeals for the Fourth Circuit has not determined whether § 2241 or § 2254 is the appropriate jurisdictional statute when state prisoners challenge the execution of their sentences. See Gregory v. Coleman, 218 F. App'x. 266, 267 (4th Cir. 2007) (acknowledging that the district court's order construing the petitioner's § 2241 petition as a § 2254 petition was a debatable procedural ruling). *But cf.* Meeks v. McKoy, 371 F. App'x 441 (4th Cir. 2010) (holding statute of limitations found in § 2244 (d)(1) applied to the petitioner's challenge of his disciplinary convictions brought under § 2254); Wade v. Robinson, 327 F. 3d 328, 331 (4th Cir. 2003) ("[T]he . . . plain

---

[1] See Gonzalez-Fuentes v. Molina, 607 F.3d 864, 875 n. 9 (1st Cir. 2010); Rittenberry v. Morgan, 468 F.3d 331, 337 (6th Cir. 2006); White v. Lambert, 370 F.3d 1002, 1005 (9th Cir. 2010); Medberry v. Crosby, 351 F.3d 1049, 1062 (11th Cir. 2003); James v. Walsh, 308 F.3d 162, 167 (2nd Cir. 2002); Crouch v. Norris, 252 F.3d 720, 723 (8th Cir. 2001); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001); Walker v. O'Brien, 216 F.3d 626, 633 (7th Cir. 2000). But see Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000) (stating state prisoners may file a habeas petitions under § 2241 or § 2254, where § 2254 petitions are used to challenge the validity of a conviction and sentence and § 2241 petitions are used to challenge the execution of his sentence); McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997) (" Petitions under § 2241 are used to attack the execution of his sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of the conviction and sentence.") (internal citations omitted)).

language [of § 2244(d)(1)] reaches any and every habeas petition filed by persons who are in custody pursuant to state court judgments. This section does not distinguish based on the contents of the petitioner's claim, but encompasses all 'applicantion[s] for writ of habeas corpus.' . . . Section 2244(d)(1) is not alone in not distinguishing among habeas claims that challenge state court judgments and those that challenge another aspect of custody. As section 2254 makes clear, the defining feature of a <u>state prisoner's</u> habeas claim is that it presents a challenge to his *custody*.") (alteration and emphasis in original).

However, district courts within the Fourth Circuit have adopted the majority view – that § 2254 is the exclusive vehicle for state prisoners to seek federal habeas relief. <u>See</u>, <u>e.g.</u>, <u>Boyd v. South Carolina</u>, Nos. 1:11-2981-TLW-SVH, 1:12-201-TLW-SCH, 2002 WL 5928727, at *3 (D.S.C. Oct 10, 2012, Report and Recommendation adopted by 2012 WL 5933011 (D.S.C. Nov. 27, 2012); <u>McGurgan v. Fox</u>, Civil Action No. 1:11cv147 (N.D. W. Va. Sept. 29, 2011 Report and Recommendation adopted by 2012 WL 1574287 (N.D. W. Va. May 3, 2012); <u>Dalton v. W.Va. Parole Bd.</u>, Civil Action No. 2:08-cv-01218 (S.D. W. Va. Dec. 8, 2009, Proposed Findings and Recommendations adopted by 2010 WL 395650 (S.D. W.Va. Jan. 19, 2010).

Therefore, the undersigned recommends that Petitioner's habeas action be construed as a § 2254 petition. However, for the reasons discussed more fully below, regardless of whether this petition is reviewed as a § 2241 or § 2254, this Court does not have jurisdiction, and transfer of the case appears to be the most appropriate resolution.

**B.** **Legal Custodian v, Physical Custodian**

This matter presents an unusual situation which does not appear to have been previously addressed in this District. As noted, Petitioner is serving a 140-year term of imprisonment following his conviction on charges returned in the Commonwealth of Puerto Rico. Although Petitioner is in the physical custody of the Federal Bureau of Prisons, he is a "state boarder" – a non-federal inmate

confined in a federal facility pursuant to an agreement entered into by the BOP and the Commonwealth of Puerto Rico, under the provisions of 18 U.S.C. § 5003 which provides as follows:

> (a)(1) The Director of the Bureau of Prisons when proper and adequate facilities and personnel are available may contract with proper officials of a State or territory, for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or territory.
>
> (2) Any such contract shall provide –
>
> > (A) for reimbursing the United States in full for all costs or expenses involved;
> >
> > (B) for receiving in exchange persons convicted of criminal offenses in the courts of the United States, to serve their sentence in appropriate institutions or facilities of the State or territory by designation as provided in section 4082 (b) of this title, this exchange to be made according to formulas or conditions which may be negotiated in the contract; or
> >
> > (C) for compensating the United States by means of a combination of monetary payment and of receipt of persons convicted of criminal offenses in the courts of the United States, according to formulas or conditions which may be negotiated in the contract.
>
> (3) No such contract shall provide for the receipt of more State or territory prisoners by the United States than are transferred to that State or territory by such contract.
>
> (b) Funds received under such contract may be deposited in the Treasury to the credit of the appropriation or appropriations from which the payments for such services were originally made.
>
> (c) Unless otherwise specifically provided in the contract, a person committed to the Attorney General hereunder shall be subject to all the provisions of law and regulations applicable to persons committed for violations of laws of the United States not inconsistent with the sentence imposed.
>
> (d) The term "State" issues in this section includes any State, territory, or possession of the United States, and Canal Zone.
>
> Therefore, while his day-to-day confinement occurs in a federal facility, Petitioner is not a

federal inmate, and neither the United States nor the Federal Bureau of Prisons is responsible for computing or administering his sentence. Instead, all decisions related to whether Petitioner is eligible for, or should be granted, parole – are reserved and made by the Commonwealth of Puerto Rico. See Colbeth v. Civiletti, 516 F.Supp. 73, 76 (S.D.Ind. 1980) (explaining that "the Federal Government, who is merely the custodian, has no authority in the area of parole" for a state prisoner in federal custody pursuant to 18 U.S.C. § 5003).

In addition, the undersigned notes that although he alleges that Respondent should have notified the Territorial Parole authorities that his parole eligibility date has been active for the last five (5) years, a reading of the Laws of Puerto Rico establishes that it is Petitioner's burden to do so:

> An inmate in a penal institution in Puerto Rico or in any Diversion Program who meets the requirements established by the Board through regulations, or in this chapter, who shows a high degree of rehabilitation and does not represent a risk to society may formally request the privilege of freedom under parole within the jurisdiction of the Board through the mechanisms provided for the same as well as through regulations. The request of the inmate shall entail his/her consent for the Board to be able to review and obtain copies of all the files on said person that are held by the Corrections Administration, in order for said person to be considered for the granting of the privileges considered in this chapter.
>
> Upon receipt of the request, the Board shall refer the evaluation thereof to one of the Panels for the corresponding process and adjudication.

4 P.L.R.A. § 1503c.[2] Therefore, the issue becomes in whose custody Petitioner is for purposes of litigating either a § 2241 or a § 2254.

---

[2] Although the undersigned has made an effort to review case law from the Commonwealth of Puerto Rico to determine the parameters of the "mechanisms and regulations" referred to in this section, those efforts have been severely hampered by the fact that opinions issued by the courts of the Commonwealth are issued in Spanish. Only decisions issued by the Supreme Court of Puerto Rico are translated into English. Furthermore, only those decisions designed by the Supreme Court are translated, and translations are not available as yet for entries after 2014.

In Rumsfield v. Padilla, 542 U.S. 426 (2004), the United States Supreme Court was faced with the question of who the proper respondent was in any § 2241 habeas action brought by a federal enemy combatant. Padilla was detained in Chicago on a material witness warrant issued by the United States District Court for the Southern District of New York, designated as an "enemy combatant" by the President and finally transported and detained in a naval brig in South Carolina at the time of filing his § 2241 petition in the United States District Court for the Southern District of New York. Padilla had not been indicted, let alone convicted, by a state or federal court; thus, he could not file for relief under §§ 2254 or 2255, which each have judgment or sentence prerequisites, thus forcing him to file under § 2241(c)(3), which has neither.

Padilla involved two issues: (1) whether the "immediate custodian rule" applied to an enemy combatant incarcerated in the South Carolina naval brig at the time of filing; and (2) whether the Southern District of New York, where Padilla had filed his § 2241 action, had personal jurisdiction over the South Carolina respondent by exercising its long-arm jurisdiction. Padilla, 542 U.S. at 434. In answering the first question, the Padilla court held that the general immediate custodian rule did apply to enemy combatants petitioners who file § 2241 cases. In doing so, the Court acknowledged that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." Id. at 434. The Court then described the long-standing "immediate custodian" rule that applied to the typical habeas petition, which "contemplate[s] a proceeding against some person who has the immediate custody of the person detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Id. at 435 (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)). Accordingly, the Court held that: "in habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General

or some other remote supervisory official." Id. Applying this rule, the Court found that the "warden" of the Naval brig where Padilla was physically confined was the custodian and, therefore, the proper respondent. Id. at 442.

In reaching its decision, the Padilla Court distinguished the "present" aspect of the "physical confinement" that Padilla was challenging with the "future" confinement faced by the habeas petitioner in Braden.[3] Therefore, although the Padilla Court reaffirmed the Braden rule that "a habeas petitioner who challenges a form of 'custody' [rather] than present physical confinement may name as respondent the entity or person who exercises his legal control with respect to the challenged 'custody,'" it concluded that the Braden rule did not apply to Padilla because "nothing in Braden

---

[3] Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973). In Braden, the Court allowed the petitioner, who was then incarcerated in an Alabama prison, to challenge a Kentucky detainer in a Kentucky federal court, because the Alabama warden was not "the person who [held] him in what [was] alleged to be unlawful custody." Id. at 494-95. After noting the more expansive definition of the "custody" requirement that had developed in the years leading up to that decision, including that of allowing a state prisoner to attack a detainer lodged against him while still serving another sentence, the Supreme Court stated:

> In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State and the custodian State is presumably indifferent to the resolution of the prisoner's attack on the detainer. Here, for example, the petitioner is confined in Alabama, but his dispute is with the Commonwealth of Kentucky not the State of Alabama. In fact, a slavish application of the rule would jar with the very purpose underlying the addition of the phrase, 'within their respective jurisdictions.' We cannot assume that Congress intended to require the Commonwealth of Kentucky to defend its action in a distant State and to preclude the resolution of the dispute by a federal judge familiar with the laws and practices of Kentucky.
>
> In view of these developments, . . . we can no longer view [our prior decision] as establishing an inflexible jurisdictional rule, dictating the choice of an inconvenient forum even in a class of cases which could not have been foreseen at the time of our decision.

Braden, 410 U.S. at 498-500 (citations omitted) (referring to prior decision in Ahrens v. Clark, 335 U.S. 188 (1984), which was overruled by Braden.

supports departing from the immediate custodian rule in that traditional context of challenges to present physical confinement." Id. at 438. The immediate custodian rule did not apply in Braden, the Padilla Court pointed out, "because there was no immediate physical custodian with respect to the 'custody' means challenge." Id. at 439.

Clearly, Petitioner is challenging his current physical confinement which stems from a conviction in the Commonwealth of Puerto Rico. Therefore, it would appear that the immediate custodian rule would apply, and the case is properly filed in this District. However, relying on the guidance of a 2006 case decided in the District of South Carolina, the undersigned believes that Petitioner's situation is of an unique nature which supports transferring this case to the United States District Court for the District of Puerto Rico. See Carballo v. Lamanna, 2006 WL 3230761 (D.S.C. Nov. 6, 2006).

In Carballo, the petitioner was sentenced and convicted by the 11th Judicial Circuit, Dade County, Florida for second degree murder. In 2003, he was transferred from a Florida state prison to the Federal Correctional Institution in Edgefield, South Carolina. The State of Florida contracted with the Federal Bureau of Prisons pursuant to 18 U.S.C. § 5003 to board the petitioner at FCI Edgefield. The petitioner filed a habeas action in the United States District Court for the District of South Carolina seeking immediate release from custody or reconsideration of an adverse parole decision of the Florida Commission. The court concluded that despite the holding in Padilla, the case should have been brought against the Attorney General of Florida or the Florida Parole Commission because they were the only entities with the ability to afford the relief the petitioner sought. Because the District of South Carolina did not have, and could not obtain, personal jurisdiction of the true respondents in the case, the court transferred the case to the Northern District of Florida.

Here, there is an immediate physical custodian, Warden O'Brien. However, Petitioner is a "boarder" at U.S.P. Hazelton, and his custody at that institution is controlled by Warden O'Brien only insofar as he is directed by the Commonwealth of Puerto Rico. Legal control of Petitioner rests with the Commonwealth of Puerto Rico, and to the extent Petitioner is challenging parole issues, Respondent is more properly identified as the Board of Parole for the Commonwealth of Puerto Rico.

For relief, Petitioner seeks immediate release or a parole hearing. However, this Court has no control or authority in the area of parole in the Commonwealth of Puerto Rico. See Colbeth, 516 F.Supp. at 777. It is clear that the Board of Parole for the Commonwealth of Puerto Rico is the only entity which can grant Petitioner relief. This Court does not have and cannot obtain jurisdiction over any "governmental" entity of the Commonwealth of Puerto Rico.[4] Accordingly, the undersigned concludes that this matter should be transferred to the District of Puerto Rico. In making this recommendation, the undersigned is in no way expressing his opinion that Petitioner is entitled to any specific relief. The undersigned assumes that Petitioner is required to exhaust his available "state" remedies before proceeding with a § 2254 petition, but it is unclear what particular remedies he is required to exhaust.[5]

---

[4] See Norris v. Georgia, 522 F.2d 1006, 1009 n.2 (4th Cir. 1975) ("Absent such authorization by a specific federal statute, the court has no 'blanket authority to enter an order for substituted or personal service outside of the state in which it is sitting.'" (internal citations omitted)).

[5] In the context of the traditional § 2254 petition filed by a defendant convicted in the Commonwealth of Puerto Rico, exhaustion of state remedies is a multilayered process. A prerequisite to state habeas corpus relief is the filing and disposition of a motion pursuant to Puerto Rico Criminal Procedure Rule 192.1 PR Laws Ann. Tit. 34, § 1741(c). As such, the defendant must first seek post-conviction collateral relief under Rule 192.1, which provides that "any person who is imprisoned by virtue of a judgment rendered by any Division of the Court of First Instance and who alleges a right to be released because . . . the sentence was imposed in violation of the Constitution or the laws of the Commonwealth of Puerto Rico or of the Constitution and laws of the United States, . . . may file a motion, in the part of the court which imposed the sentence, to vacate, set aside, or correct the judgment." Thereafter, the order entered by the Court of First Instance is appealable to the Appeals Court, and subsequently to the Supreme Court of Puerto Rico. After said remedy has been exhausted, the prisoner must then seek habeas relief in

Finally, as an alternative basis for transferring this matter, the undersigned notes that in his Memorandum in Support of Motion to Dismiss/Motion for Summary Judgment, Respondent asserts that this matter should be transferred to the United States District for the District of Puerto Rico, which has personal jurisdiction over the legal custodian of Petitioner. In his response, Petitioner states that he "has no adverse response to the Respondent's request for this Court to transfer this matter to it's [sic] respective jurisdiction where Petitioner's 'true custodian' resides." ECF No. 19-1 at 5. Title 28, United States Code, Section 1404 provides as follows:

> (a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought, **or to any district or division to which the parties have consented**.

(emphasis added.) Accordingly, it would appear that this Court could transfer the matter to the United States District Court for the Commonwealth of Puerto Rico based on the parties' consent.

## V.   RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss of for Summary Judgment [ECF No. 15] be **DENIED**, and the Court transfer the Petition to the United States District Court for the District of Puerto Rico.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver

---

the state courts, prior to filing a petition for federal habeas relief. See Diaz-Castro, 683 F.Supp.2d 189 (United States District Court District of Puerto Rico, February 10, 2010). However, the undersigned has been unable to determine the requirement for exhausting issues related to parole.

of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, at his last know address as reflected on the docket sheet and to counsel of record via electronic mean.

**DATED**:  February 3, 2016

                                                 */s Robert W. Trumble*
                                                 ROBERT W. TRUMBLE
                                                 UNITED STATES MAGISTRATE JUDGE